IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **GREG J. KAMINSKI**, | CASE NO.    1:19-cv-01954 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **CUYAHOGA COUNTY, et al.,** | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT JECUBIC, BARTHANY, KING, AND GRIFFIN'S MOTIONS FOR SUMMARY JUDGMENT**

Sarah Gelsomino (0084340)
Marcus Sidoti (0077476)
FRIEDMAN, GILBERT + GERHARDSTEIN
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com
marcus@FGGfirm.com

Jacqueline Greene (0092733)
M. Caroline Hyatt (0093323)
FRIEDMAN, GILBERT + GERHARDSTEIN
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
T: 513-572-4200
F: 216-621-0427
jacqueline@FGGfirm.com
caroline@FGGfirm.com

*Counsel for Plaintiff*

Dated: August 17, 2021

BRIAN KRAIG, ESQ. (0039691)
KEVIN V. ROGERS, JR. (0084994)
OF: KRAIG & KRAIG
The Superior Building 19th Floor
815 Superior Avenue East, Suite 1920
Cleveland, Ohio 44114
(216) 696-4009 phone
(216) 696-1835 fax
kraigandkraig@gmail.com
kvrlaw@gmail.com

*Counsel for Plaintiff*

i

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 1

LAW AND ARGUMENT .................................................................................................... 5

    I.    Summary Judgment Standard ................................................................................ 5

    II.    Plaintiff's Constitutional Claims Against the Individual Defendants Must Proceed to
Trial ............................................................................................................................ 5

        A.    Defendants Jecubic and Barthany Violated Greg Kaminski's Clearly Established
Constitutional Rights When They Used Excessive Force ...................................... 6

        B.    Defendants Jecubic, King, and Griffin Violated Greg Kaminski's Clearly Established
Constitutional Rights When They Put Him in a Restraint Chair and Kept Him Restrained for
OC Decontamination ............................................................................................ 13

    III.    Plaintiff's State Law Claims Must Proceed to Trial .................................... 16

        A.    The Assault and Battery Claims Are Not Time-Barred ............................ 16

        B.    The Individual Defendants are Liable for Assault and Battery for the Same Reasons
Their Actions Constituted Excessive Force ....................................................... 17

        C.    The Individual Defendants Are Not Entitled to Immunity from the Assault and
Battery Claims ..................................................................................................... 18

        D.    The Individual Defendants are Liable for their Reckless Breach of Duty ................ 19

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Abdul–Khaliq v. City of Newark,*
    275 F.App'x 517 (6th Cir. 2008)……………………………………………………...12

*Alley v. Bettencourt,*
    134 Ohio App.3d 303, 730 N.E.2d 1067 (4th Dist. 1999)………………………………18

*Anderson v. Liberty Lobby Inc.,*
    477 U.S. 242 (1986)……………………………………………………………………….5

*Anderson v. Massillon,*
    134 Ohio St.3d. 380, 983 N.E. 2nd 266 (2012)……………………………………...19, 20

*Argabrite v. Neer,*
    149 Ohio St. 3d 349, 2016-Ohio-8374, 75 N.E.3d 161………………………………......19

*Aslanidis v. U.S. Lines, Inc.,*
    7 F.3d 1067 (2nd Cir. 1993)……………………………………………………………...17

*Baker v. City of Hamilton, Ohio,*
    471 F.3d 601 (6th Cir. 2006)……………………………………………………………...7

*Baskin v. Smith,*
    50 F.App'x 731 (6th Cir. 2002)…………………………………………………………..14

*Bell v. Wolfish,*
    441 U.S. 520 (1979)……………………………………………………………………...14

*Berndt v. Tennessee,*
    796 F.2d 879 (6th Cir. 1986)…………………………………………………………….17

*Bing v. City of Whitehall,*
    456 F.3d 555 (6th Cir. 2006)…………………………………………………………….12

*Blackmon v. Sutton,*
    734 F.3d 1237 (10th Cir. 2012)…………………………………………...……14, 15

*Burgess v. Fischer,*
    735 F.3d 462 (6th Cir. 2013)…………………………………………………………….20

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)……………………………………………………………………….5

iii

*Ciminillo v. Streicher*,
   434 F.3d 461 (6th Cir. 2006)………………………………………………………6

*Coble v. City of White House*,
   634 F.3d 865 (6th Cir. 2011)………………………………………………………8

*Cornwell v. Dahlberg*,
   963 F.2d 912 (6th Cir. 1992)………………………………………………………13

*Cox v. Treadway*,
   75 F.3d 230 (6th Cir. 1996)……………………………………………………16, 17

*Crawford v. Geiger*,
   656 F.App'x. 190 (6th Cir. 2016)…………………………………………………6

*David v. Matter*,
   2017-Ohio-7351, 96 N.E.3d 1012 (6th Dist.)……………………………………20

*Degolia v. Kenton County*,
   381 F.Supp.3d 740 (E.D. Ky. 2019)………………………………………………15

*Fletcher v. Vandyne*,
   No. 2:07–CV–325, 2009 WL 1687956 (S.D. Ohio June 11, 2009)…………………14, 15

*Floyd v. City of Detroit*,
   518 F.3d 398 (6th Cir. 2008)………………………………………………………7

*Graham v. Connor*,
   490 U.S. 386 (1989)…………………………………………………………………6

*Green v. Throckmorton*,
   681 F.3d 853 (6th Cir. 2012)………………………………………………………8

*Hanson v. Madison Cty. Det. Ctr.*,
   736 F.App'x 521 (6th Cir. 2018)……………………………………………8, 12, 13

*Hardesty v. Alcantara*,
   2015-Ohio-4591, 48 N.E.3d 127 (8th Dist.)………………………………………19

*Harris v. City of Circleville*,
   583 F.3d 356 (6th Cir. 2009)………………………………………………………7

*Harris v. United States*,
   422 F.3d 322 (6th Cir. 2005)………………………………………………………17

*Holmes v. City of Massillon,*
    78 F.3d 1041 (6th Cir.1996)……………………………………………………..13

*Ingram v. City of Columbus,*
    185 F.3d 579 (6th Cir. 1999)……………………………………...…………...13

*Jefferson v. Lewis,*
    594 F.3d 454 (6th Cir. 2010)………………………………………………...6

*Jennings v. Mitchell,*
    93 F.App'x 723 (6th Cir. 2004)……………………………………………………12

*Kingsley v. Hendrickson,*
    576 U.S. 389 (2015)……………………………………………………………5, 6

*Lawler v. City of Taylor,*
    268 F.App'x. 384 (6th Cir. 2008)……………………………………………7

*Leonhardt v. City of Akron,*
    No. 29049, 2019-Ohio-5223 (9th Dist.)………………………………………..19, 20

*Love v. City of Port Clinton,*
    37 Ohio St.3d 98, 524 N.E.2d 166 (1988)…………………………………...17, 18, 19, 20

*McDowell v. Rogers,*
    863 F.2d 1302 (6th Cir. 1988)………………………………………………7

*McGovern v. Lucas County, Ohio,*
    No. 3:18-cv-2506, 2021 WL 1176737 (N.D. Ohio March 29, 2021)…………………..7

*Moore v. City of Cleveland,*
    2017-Ohio-1156, 87 N.E.3d 858 (8th Dist.)…………..…………………………19

*Monday v. Oullette,*
    118 F.3d 1099 (6th Cir. 1997)………………………………………………...12

*Morabito v. Holmes,*
    628 F.App'x 353 (6th Cir. 2015)………………………………………………..7

*Morrison v. Bd. of Tr. of Green Twp.,*
    583 F.3d 394 (6th Cir. 2009)………………………………………………14

*Morrison v. Horseshoe Casino,*
    2020-Ohio-4131, 157 N.E.3d 406 (8th Dist.)……………………………………18

*Scott v. Harris*,
    550 U.S. 372 (2007)……………………………………………………………….8

*Smith v. John Deere Co*.,
    83 Ohio App.3d 398, 614 N.E.2d 1148 (1993)…………………………………..18

*Thomas v. Greene*,
    201 F.3d 441 (table) (6th Cir. 1999)……………………………………………..12

*Thompson v. McNeill*,
    53 Ohio St.3d 102, 559 N.E.2d 705 (1990)……………………………………...20

*Tufts Carter v. Hymes*,
    No. 108523, 2020-Ohio-3967 (8th Dist.)………………………………………...19

*Wright v. City of Euclid, Ohio*,
    962 F.3d 852 (6th Cir. 2020)…………………………………………………..7, 12

**Statutes and Rules**

Fed. R. Civ. P. 56(c)………………………………………………………………………5

Fed. R. Civ. P. 15………………………………………………………………….16, 17

O.R.C. § 2744.03…………………………………………………………………..18, 19

## INTRODUCTION

At the Cuyahoga County Corrections Center ("CCCC"), the Special Response Team ("SRT") operates as a band of thugs, using force with impunity against those detained at the CCCC.[1] On July 29, 2018, Plaintiff Greg Kaminski became the subject of their ire. Defendant SRT officers Jecubic and Barthany pepper sprayed and brutally beat him until he lost consciousness, suffering severe injury. Despite the fact that he was not resisting, noncompliant, or posing any threat whatsoever, he was then placed in a restraint chair by Defendant SRT officers Jecubic and King, and "decontaminated" and left in the restraint chair for an hour by Defendant Griffin. These uses of force were unprovoked, unnecessary, and unconstitutional. There are critical facts in dispute that must be resolved by a jury. Summary judgment must be denied on all claims.

## STATEMENT OF FACTS

Plaintiff Greg Kaminski experienced the brutality of the SRT officers after he was arrested and booked into the CCCC on July 29, 2018. (Doc. 54, Kaminski, PageID#1294-1295). While he was being booked, a booking officer made a "1019" call for an unruly inmate, and SRT responded. (P 1, Griffin, pp. 29-30). However, while Kaminski was loud, intoxicated, and off-balance, he was not violent, aggressive, or threatening. (P 1, Griffin, pp. 42-43; Doc. 50, Jecubic, PageID#643-644, 652; Doc. 51, Barthany, PageID#800-804). And while Kaminski was briefly uncooperative in regards to giving booking his information and he kept trying to sit down when they tried to take his picture, he became cooperative. (P 1, Griffin, pp. 43-44). He did not actually disrupt any of the operations of the CCCC. (Doc. 50, Jecubic, PageID#646).

While there was no actual security concern justifying SRT's presence in booking,

---

[1] More detail is provided in Plaintiff's Memorandum in Opposition to Defendant Cuyahoga County's Motion for Summary Judgment. (Doc. 69).

Kaminski was making racist statements and he used slurs against Defendant SRT officer Barthany, who is Black. Defendant SRT officers Jecubic and Barthany brought Kaminski to the elevator to take him upstairs to get him dressed. (Doc. 50, Jecubic, PageID#653-654; Doc. 51, Barthany, PageID#801). As soon as he was on the elevator, out of sight of the cameras recording them in the booking area, Kaminski was pushed to the ground by Defendant Jecubic. (Doc. 54, Kaminski, PageID#1316). Once Jecubic had him on the ground, Defendant Barthany sprayed OC spray directly into Kaminski's eyes. (*Id*., PageID#1319). Then Jecubic began to kick him in the ribs. (*Id*., PageID#1329). Although Kaminski was blinded by the OC spray, he could feel Defendants Jecubic and Barthany both kicking him in the ribs, face, nose, and jaw before he lost consciousness. (*Id*., PageID#1316, 1320, 1328). It is undisputed that Kaminski suffered a fracture of his orbital bone (over his left eye), contusions on his forehead, jaw, and ribs, and a laceration over his left eye. (Doc. 54-1, MetroHealth Records, PageID#1469). These injuries, including the contusion to the ribs, are consistent with Kaminski's testimony of the beating he received.

Plaintiff's law enforcement and corrections expert opined that the force used by Defendants Jecubic and Barthany was unreasonable, unnecessary, and disproportional by generally accepted correctional use of force practices, and that Jecubic and Barthany violated Ohio jail standards, American Correctional Association standards, and generally accepted jail practices. (P 2, Raney Report, pp. 36-37).

Afterwards, Defendant Jecubic handcuffed Kaminski, and Defendant Barthany called a "1025," the code for an emergency. (Doc. 50, Jecubic, PageID#685). Defendant corporal Griffin, who was already nearby, responded, as well as Defendant SRT officer King, Sergeant Thevenin, and Corporal O'Meara. (*Id*.). When they responded, they found Kaminski already handcuffed, with OC spray foam on his face. (Doc. 48, King, PageID#349).

Sergeant Thevenin then ordered that Kaminski be put in a restraint chair, (Doc. 50, Jecubic, PageID#685), and Defendants Jecubic and King put Kaminski in the chair. (Doc. 48, King, PageID#352; Doc. 48-6, King Combination Report, PageID#415; Doc. 50-4, Jecubic Combination Report, PageID#720). Jecubic and King both admit, however, that Kaminski was compliant and not offering any resistance. (*Id*. PageID#353; Doc. 50, Jecubic, PageID#688). In fact, all of the Defendants agree that Kaminski was completely compliant throughout the entire period in which he was handcuffed and put into the restraint chair. (Doc. 50, Jecubic, PageID#688-689; Doc. 51, Barthany, PageID#830; Doc. 48, King, PageID#353, 370; P 1, Griffin, p. 73).

The American Correctional Association says that restraint chairs should only be used to prevent self-injury, injury to others, or property damage, and that they are not to be applied for more time than is necessary. See P 2, Raney Report, p. 38, citing American Correctional Association Performance-Based Standards for Adult Local Detention Facilities, Fourth Edition. Standard 4-ALDF-2B-01 & 02. p. 32. There was no justification for placing Kaminski in the restraint chair under this standard. The CCCC written restraint chair policy allows use of the restraint chair when the inmate poses a threat to others, when he may harm himself, or when he disrupts normal jail operations. (Doc. 48-1, Use of Restraint Chair Policy, PageID#402). There was no justification for placing Kaminski in the restraint chair under this standard either. The use of the restraint chair in this circumstance was unnecessary and unreasonable, and did not comply with Ohio jail standards, American Correctional standards, and generally accepted correctional practices. (P 2, Raney Report, p. 37).

The punitive nature of this policy is particularly clear in the context of the barbaric and torturous decontamination and monitoring process. After an individual has been sprayed with OC spray, they are taken, in the restraint chair, to be "decontaminated." (Doc. 50, Jecubic,

PageID#685). At the CCCC, this "decontamination" process serves primarily as an excuse to further abuse inmates. The inmate, strapped into the restraint chair, has water dumped over their head. The position of the restraint chair, slightly reclined, makes it impossible to breathe as water rushes down their face. If they do try to breathe, the OC spray will get into their mouth and nose, causing further irritation. During decontamination, an officer reads the "OC Administrative Warning." (P 3, Griffin Ex. 19 – OC Spray Warning). However, the OC warning is more accurately described as a serious of questions to answer, than a statement read by the corrections officer. (*Id.*). Answering these questions, while the water is being dumped over their heads, ensures maximum pain and discomfort, as the inmates get OC spray in their mouths and choke and sputter as they try to breathe and speak through the water. There is simply no penological, safety, or medical basis for waterboarding detainees during OC decontamination.

Defendant Griffin, along with Officer Smith, another SRT member, took Kaminski for decontamination and monitoring and "decontaminated" him consistent with this policy and practice. (P 1, Griffin, p. 74). Smith read the decontamination questions and they used a hose to "rinse" Kaminski's face numerous times. (P 1, Griffin, p. 75). Defendant Griffin and Smith took him for a very brief medical evaluation, and then to the restraint room on the seventh floor. (*Id.*, p. 76). Kaminski remained there in the restraint chair for an hour, despite the fact that it is undisputed that he was compliant the entire time. (*Id.*, p. 77; P 4, Griffin Ex. 17 – Restraint Chair Record).

During this entire period, Kaminski, whose face was bleeding and swollen, was suffering a laceration over his eye and a broken orbital bone. However, because the purpose of the decontamination process was punitive rather than the provision of medical treatment, he received no medical treatment for these injuries until after his punishment was complete. (P 5, Griffin Ex.

18 – Log book). It was only after an hour of "monitoring" in the restraint chair that he was finally sent to the hospital for actual medical treatment. (*Id*.) After returning from the hospital, Kaminski was put in segregation, for allegedly attacking Defendant Jecubic. While he was there, Defendant Jecubic visited him and bragged about "whooping [his] ass." (Doc. 54, Kaminski, PageID#1426). This is undisputed. (Doc. 50, Jecubic, PageID#689-690).

Kaminski was scared to death in segregation, terrified that the Defendant SRT officers, particularly Defendant Jecubic, would come back to kill him. (Doc. 54, Kaminski, PageID#1423, 1425-1427). He was fearful and in pain, and it made it hard to sleep. (*Id*.). After getting out of segregation, the fear lessened, but continues to this day. (*Id*.).

## LAW AND ARGUMENT

### I.    Summary Judgment Standard

Summary judgment is appropriate only when the evidence shows no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must view evidence in a light most favorable to Plaintiff and draw all reasonable inferences in his favor. *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 251 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. at 255.

### II.   Plaintiff's Constitutional Claims Against the Individual Defendants Must Proceed to Trial

Courts evaluate claims of excessive force, including those brought by pretrial detainees, under an objective reasonableness standard. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-397 (2015). Determining whether the force used to affect a particular seizure is reasonable under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the

individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This analysis "requires careful attention to the facts and circumstances of each particular case." *Id*. Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397, citing *Graham*, 490 U.S. at 396. This determination rests upon "whether the totality of the circumstances justifies a particular sort of seizure." *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006).

This is an objective test, judged "from the perspective of a reasonable officer on the scene, including what the officer knew at the time." *Kingsley*, 576 U.S. at 397. Thus, where the force "is not rationally related to a legitimate governmental objective or … is excessive in relation to that purpose," that use of force is objectively unreasonable, and the fact that it was "applied in a good-faith effort to maintain or restore discipline," is irrelevant to the evaluation of reasonableness. Additionally, in deciding excessive force claims, the Court is obligated to "not simply accept what may be a self-serving account by the police officer," and must instead look at the direct and "circumstantial evidence that, if believed, would tend to discredit the police officer's story." *Jefferson v. Lewis*, 594 F.3d 454, 462 (6th Cir. 2010).

### A. Defendants Jecubic and Barthany Violated Greg Kaminski's Clearly Established Constitutional Rights When They Used Excessive Force

A use of force is unreasonable when the defendant "us[es] gratuitous violence against an individual who poses no threat to the office[r] or anyone else." *Crawford v. Geiger*, 656 F.App'x. 190, 204 (6th Cir. 2016) (internal citations omitted) (applying *Kingsley* to excessive force claim,

court denied qualified immunity to sergeant who shoved arrestee who was not resisting).[2]

Here, the material facts surrounding the cause of Defendants Jecubic and Barthany's use of force are strongly disputed by the Parties. Under the version of the facts most favorable to the Plaintiff, he posed no threat whatsoever when Defendant Jecubic suddenly pushed him in the elevator, completely unprovoked. While he had been using foul and offensive language, and had even used a slur against Defendant Barthany, this is not an adequate justification for a use of force. See *Lawler v. City of Taylor*, 268 F.App'x. 384, 386-388 (6th Cir. 2008) (arrestee tackled during booking after calling officer a "pussy" had clearly established right to be free from use of force where there is no perceived threat); *McGovern v. Lucas County, Ohio*, No. 3:18-cv-2506, 2021 WL 1176737 (N.D. Ohio March 29, 2021) (rejecting argument that use of racial slur by inmate created threat to tank stability that necessitated use of force). Accepting the facts in the light most favorable to Plaintiff, as required for the purpose of summary judgment, the analysis here is simple. Because Kaminski did not pose a threat and was not resisting nor attempting to escape, the gratuitous use of force by Defendants Jecubic and Barthany was a clearly established violation of Kaminski's constitutional rights.

In arguing otherwise, Defendants fail to accept the facts in the light most favorable to Plaintiff. Defendants argue that this is permissible because they argue that Kaminski's testimony

---

[2] See also *McDowell v. Rogers,* 863 F.2d 1302, 1307 (6th Cir. 1988) (where an arrestee poses no threat to others and is not trying to escape, an "unprovoked and unnecessary blow" violates the Fourth Amendment); *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 608 (6th Cir. 2006) (use of force unwarranted where "unarmed," "compliant" individual was "not a significant threat" because "[c]ases in this circuit clearly establish the right of people who pose no safety risk… to be free from gratuitous violence"); *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) (clearly established right precluding the use of violent physical force against someone who has been subdued and does not present a danger to himself or others whether evaluated under Fourth or Fourteenth Amendment standard); *Floyd v. City of Detroit*, 518 F.3d 398, 409 (6th Cir. 2008) (unarmed and nondangerous suspect's right to be free from excessive force was clearly established); *Morabito v. Holmes*, 628 F.App'x 353, 357-358 (6th Cir. 2015) (use of force against agitated and verbally combative inmate was unreasonable because inmate posed no risk to himself or others); *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 871 (6th Cir. 2020) (right to be free from being pepper sprayed when not actively resisting is clearly established).

of his experience is inconsistent with the available video footage. Defendants are incorrect. In cases where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, this is a high standard. To discount Kaminski's testimony of the assault, the video must "blatantly contradict" his account "in material respects to each claim." *Hanson v. Madison Cty. Det. Ctr.*, 736 F.App'x 521, 527 (6th Cir. 2018). Thus "where the video does not tell the whole story in a material respect, 'reasonable jurors could interpret the video evidence differently,' summary judgment is not appropriate." *Id*., quoting *Green v. Throckmorton*, 681 F.3d 853, 865 (6th Cir. 2012).

Additionally, the entirety of the story must be blatantly contradicted, not merely portions of it: "[e]ven if part of a party's testimony is blatantly contradicted by an audio or video recording, that does not permit the district court to discredit his entire version of the events." *Id*., quoting *Coble v. City of White House*, 634 F.3d 865, 870 (6th Cir. 2011) (internal brackets omitted). "In other words, that a recording blatantly contradicts a party's exact version of the events, or certain parts of his version, is not alone fatal at summary judgment. A recording must blatantly contradict a party's *entire* version of the events in material respects to each claim." *Id*., quoting *Coble*, 634 F.3d at 870 (original emphasis; internal quotations and brackets omitted).

This is not a case where the video "speak[s] for itself" such that there could be only one interpretation of what happened, because the actual incident was not captured on video. The video only captures the the moments before Kaminski boarded the elevator. There is no video of the elevator ride itself. And even if anything in the video does refute any of Kaminski's testimony, none of it is material to his allegations.

8

First, Defendants argue that Kaminski's testimony that he was pushed from outside of the elevator, into the elevator, is not supported by the video, which shows everyone walking into the elevator and does not show the push. However, this is both incorrect and immaterial. Kaminski testified that the push occurred after he was in the elevator, where it cannot be seen on the video. (Doc. 54, Kaminski, PageID#1404). Even if the video did refute Kaminski's testimony, whether the push occurred after they were on the elevator, or started outside of the elevator, is not a material fact. Under either version, it was an unjustified and gratuitous use of force. Second, Defendants claim that Kaminski said he was handcuffed during the incident, and the video shows that he was not handcuffed when he entered the elevator. This is not material to the allegations that Defendant Jecubic and Barthany used excessive force against him, because even if not handcuffed, the force used was still gratuitous and excessive. However, this is misrepresenting Kaminski's testimony, wherein he could not remember clearly if he was handcuffed or not. (*Id*., PageID#1364-1365).

Defendants then argue based on the dimensions of the elevator, that the assault could not have occurred the way that Kaminski described, because he said his legs were straight, and not curled, and the elevator was not large enough for Kaminski's legs to be outstretched. These meaningless facts are simply not material to Plaintiff's claims. Defendants' attempt to nitpick such insignificant details does not support that Kaminski's testimony is "blatantly contradicted" by the video in any material way. It is undisputed that the assault was not captured on video, and so the video cannot speak for itself. And in fact, while the Defendants are only able to challenge inconsequential facts, the evidence supports Kaminski's material allegations: while Defendants Jecubic and Barthany testified that Jecubic only pushed Kaminski and used an arm bar technique, and Barthany only used OC spray on him, the medical records demonstrate a number of contusions, including on his ribs, which is consistent with Kaminski's testimony that Jecubic and Barthany

9

kicked him in the ribs. (Doc. 54-1, MetroHealth Records, PageID#1469).

While Defendants generally refuse to accept the facts in the light most favorable to Plaintiff, they apparently find it convenient to accept his testimony that he was still unconscious when he was placed in the restraint chair. It is worth noting that if this testimony is accepted for purposes of summary judgment, as it should be, that that would lead to the inference that either 1) Kaminski was unconscious when Jecubic and Barthany used force on him, or 2) that Jecubic and Barthany beat him so severely that he lost consciousness. Under both inferences, such force would be gratuitous and excessive, regardless of how the incident began. There is simply no right for corrections officers to beat a detainee until they lose consciousness because he grabbed a correction officer's arm tightly. Arguing otherwise is absurd and contrary to clearly established law.

Astonishingly, even under the facts as argued by Defendants Jecubic and Barthany, the force used was still unreasonable and excessive compared to any minimal threat posed by Kaminski. While Kaminski's testimony is that the assault was unprovoked and Defendant Jecubic testified that Kaminski grabbed his arm – a material dispute that precludes summary judgment – merely grabbing Jecubic's arm does not justify the force used. While he testified that Kaminski grabbed his arm "in an aggressive manner" and that he believed that Kaminski "was trying to fight me," Defendant Jecubic was not able to describe an objective basis for that subjective interpretation, beyond it being "tight." (Doc. 50, Jecubic, PageID#659, 664). He also did not remember Kaminski so much as moving him or jerking him. (*Id*., PageID#665). In response to this grab, which beyond Jecubic's subjective testimony of it as aggressive, could be easily explained as merely that of an intoxicated man who was off-balance latching on to something nearby for stability, and which Kaminski denies, Defendant Jecubic pushed Kaminski in the chest with both hands, and Kaminski "stumbled back" for "some distance." (*Id*., PageID#666). However, instead

10

of stopping there, Defendant Jecubic then immediately used an arm bar technique to take Kaminski down to the ground with such force that he fractured bone. (*Id*., PageID#666, 673).

Notably, Defendant Jecubic admitted that Kaminski did not resist or make any aggressive movement after Jecubic pushed him. (*Id*., PageID#667). Defendant Barthany agreed, describing Kaminski following the push only as "wobbly." (Doc. 51, Barthany, PageID#817). To use the arm bar technique on Kaminski with such force that Kaminski hit the floor face first with enough force that bone fractured, in the absence of any further aggressive movements, was gratuitous and unreasonable. *Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010) ("no governmental interest in continuing to beat" detainee when reasonable officer would know threat was neutralized).

While Defendants argue that the push and arm bar were one continuous motion, in an attempt to justify the continued use of force in the absence of any further aggressive movements from Kaminski, this interpretation is belied by Defendant Jecubic's testimony, referenced above. Jecubic admitted that after he pushed Kaminski, Kaminski "stumbled back" for "some distance." (Doc. 50, Jecubic, PageID#666). The first action, pushing Kaminski, and the second action, taking him to the ground, cannot be part of a continuous motion if the push, as testified by Jecubic, put distance between them. Taking Kaminski violently to the ground with enough force to break the bones in his face was significantly more force than was justified even under Jecubic's version of the facts, because Kaminski had only grabbed his arm, and Jecubic's push successfully put distance between them. In the absence of any further aggressive movement from Kaminski this use of force was unreasonable. Jecubic made no effort whatsoever to temper or limit the force he used, and Jecubic admits that Kaminski was not actively resisting at the time. (*Id*, PageID#667-668).

Defendants Jecubic and Barthany then testified that after Kaminski was on the ground, he squirmed under Jecubic as Jecubic tried to handcuff him. But these movements, even as described

11

by Jecubic and Barthany, did not pose any danger or justify the force used by Defendants. Barthany described Kaminski's arms as "fluttering" and Jecubic said they were not punches and were not of a nature that could cause serious harm. (Doc. 51, Barthany, PageID#821; Doc. 50, Jecubic, PageID#676). Despite this, Defendant Barthany sprayed OC spray directly into Kaminski's eyes. Barthany testified this was because he thought Kaminski was trying to hit Jecubic, but even based on Jecubic and Barthany's testimony, a jury could easily find that the threat of Kaminski "fluttering his arms and trying to turn" did not justify OC spray. (Doc. 51, Barthany, PageID#821, 823-824). See *Wright*, 962 F.3d at 871 (finding jury question as to whether use of pepper spray within inches of face constituted excessive force against plaintiff who was resisting officer's attempt to gain control of his arm because use at such close proximity "risks significant injury"). This is especially true because Barthany admitted that he never saw Kaminski actually hit Jecubic. (Doc. 51, Barthany, PageID#823-824).

When courts have found the use of pepper spray justified, the threat posed has been much more significant than that described by Defendant Barthany. See *Abdul–Khaliq v. City of Newark*, 275 F.App'x 517 (6th Cir. 2008) (pepper spray's purpose is to give police an effective non-lethal option to take custody of an armed suspect who refuses to be lawfully arrested or detained); *Monday v. Oullette*, 118 F.3d 1099 (6th Cir. 1997) (officers may use pepper spray to take custody of suspect presenting danger to himself); *Bing v. City of Whitehall*, 456 F.3d 555, 569-770 (6th Cir. 2006) (use of pepper spray found to be reasonable where dangerous suspect refuses to comply with police and has access to arms).[3] On the other hand, the gratuitous use of pepper spray is

---

[3] The Sixth Circuit cases cited to by Defendants are exclusively Eighth Amendment cases involving convicted prisoners, not pretrial detainees subject to the Fourteenth Amendment objective reasonableness standard. See *Jennings v. Mitchell*, 93 F.App'x 723 (6th Cir. 2004) (analyzing prisoner's Eighth Amendment claim): *Thomas v. Greene*, 201 F.3d 441 (table) (6th Cir. 1999) (analyzing prisoner's Eighth Amendment claim). The caselaw cited to by Defendants Jecubic and Barthany from other circuits is not controlling.

unlawful. *Hanson*, 736 F.App'x 521.

However, even though the facts relied on by Defendants demonstrate that they used excessive force, this is not the standard for summary judgment. The Court must accept the facts in the light most favorable to Plaintiff, not the facts in the light most favorable to Defendants. There are significant and genuine disputes over the material facts of this case. Taking the facts in the light most favorable to Plaintiff demonstrates that Kaminski never posed a threat and that Defendants Jecubic and Barthany's uses of force were gratuitous, completely unjustified, and unreasonable. The use of gratuitous force is constitutionally excessive. Jecubic and Barthany's violation of this clearly established right means that this Court must deny Defendant Jecubic and Barthany's motion for summary judgment.

**B. Defendants Jecubic, King, and Griffin Violated Greg Kaminski's Clearly Established Constitutional Rights When They Put Him in a Restraint Chair and Kept Him Restrained for OC Decontamination**

While the Defendants argue that the use of the restraint chair does not run afoul of the Constitution, primarily because it did not cause physical injury, Defendants are misguided.[4] Excessive force has never been limited to claims of assault or to physical contact that leaves excessive marks or causes extensive physical damage. *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999), citing *Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir.1996) (upholding excessive force claim where plaintiff alleged that officers used excessive force in removing her wedding ring); *Cornwell v. Dahlberg*, 963 F.2d 912, 915 (6th Cir. 1992) (claims of excessive force do not require allegations of assault). The violation is of one's rights. Thus, "the 'extent of the injury inflicted' is not 'crucial to an analysis of a claim for excessive force in

---

[4] Defendant King and Griffin point out that King was asking consistent with Cuyahoga County policy. However, for the reasons explained in Plaintiff's Memorandum in Opposition to Defendant Cuyahoga County's Motion for Summary Judgment. (Doc. 69), that policy is unconstitutional.

violation of the Fourth Amendment'." *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009) (quoting *Baskin v. Smith*, 50 F.App'x 731, 737 n. 2 (6th Cir. 2002)).

Restraints bearing a reasonable relationship to the legitimate interest in ensuring the safety and order of the facilities where the government houses pretrial detainees do not constitute punishment "even if they are discomforting." *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2012), citing *Bell v. Wolfish*, 441 U.S. 520, 540 (1979). However, the use of a restraint chair is an unconstitutional punishment of a detainee where there is an "expressed intent to punish on the part of detention facility officials" or where "the restriction... bears no reasonable relationship to any legitimate governmental objective." *Id.*, citing *Bell*, 441 U.S. at 538.

In *Blackmon*, the court found that the use of a restraint chair "when there was no hint [the plaintiff] posed a threat of harming himself or anyone else" and keeping him restrained for periods "after any threat of self-harm had dissipated" had no legitimate penological purpose. *Id.* at 1242. Even under the higher Eighth Amendment standard, the use of a restraint chair is excessive when the inmate is not combative or resistant. *Fletcher v. Vandyne*, No. 2:07–CV–325, 2009 WL 1687956, *14 (S.D. Ohio June 11, 2009) (finding genuine dispute of material fact regarding whether convicted prisoner's placement into restraint chair was excessive under Eighth Amendment where there was a dispute over whether plaintiff was combative at time of placement). It is undisputed that Kaminski was not aggressive, resistant, or in any way non-compliant when he was put in the restraint chair by Defendants Jecubic and King, and when Defendant Griffin kept him in the restraint chair for the OC spray decontamination procedure and for an hour of monitoring after decontamination. Thus, this restraint of Mr. Kaminski's person was gratuitous, constitutionally excessive, and without any legitimate penological justification.

Defendants argue that the use of the restraint chair was justified based on Kaminski's

14

"propensity for unpredictable and violent behavior" and the fact that he "had just attacked an officer." (Doc. 57, Jecubic and Barthany Motion, PageID#1660; Doc. 58, King and Griffin Motion, PageID#1693). Because these facts are disputed, summary judgment is necessary. However, there is no penological justification for using a restraint chair after a threat has dissipated. *Blackmon*, 734 F.3d at 1242. While Defendants argue that placement in the restraint chair for an hour is reasonable because another case found the use of a restraint for two hours was reasonable, it is the penological need, not the amount of time, that is the key. In *Degolia v. Kenton County*, 381 F.Supp.3d 740 (E.D. Ky. 2019), cited to by Defendants, it is undisputed that the plaintiff was actively resisting, so the two hours spent in the restraint chair were not unreasonable in that case. Here, the Defendants agree that Plaintiff was compliant at the time he was put into and held in the chair. The use of the restraint chair on Kaminski was not unjustified because the length of time passed a particular limit. Rather, that entire hour was unjustified, because he was complaint the entire time and there was no threat that justified its use.

In their motion, then Defendants argue that the restraint chair was necessary because Kaminski was unconscious. This is raised both in regards to the initial placement of Kaminski in the restraint chair by Defendants Jecubic and King and in regards to Defendant Griffin keeping him in the chair for an hour. However, this is directly contrary to the testimony of the individual Defendants, none of whom say that Kaminski was unconscious. Accepting the dispute of fact as to whether Kaminski was unconscious, it is not reasonable to strap an unconscious detainee into a restraint chair (or to them keep him there for an hour). In fact, in *Vandyne*, a dispute of fact existed regarding whether the use of the restraint chair was reasonable based on the plaintiff's testimony "that he was unconscious when he was placed in the chair… and was, presumably, not combative." *Vandyne*, 2009 WL 1687956, *14. Thus, the fact that Kaminski was unconscious supports the

15

unreasonableness of the use of the restraint chair, it does not justify it. Finally, Defendant Griffin argues that continuing to use the restraint chair for an hour was justified because Kaminski had to be monitored. However, the County has admitted that the restraint chair is not necessary for monitoring. (Doc. 53, Muhammad, PageID#1234). Thus, both the initial use of the chair by Defendants Jecubic and King and Defendant Griffin keeping Kaminski in the chair for an hour were both unreasonable and lacking any penological justification. Because it is clearly established that the use of a restraint chair when there is no threat of harm to the detainee or others is constitutionally excessive, summary judgment must be denied.

## III.    Plaintiff's State Law Claims Must Proceed to Trial

The individual Defendants are also liable for their assault and battery of Greg Kaminski. These claims are not time-barred and are not subject to Ohio statutory immunity. Material facts preclude summary judgment on these claims for the same reasons there are material disputes regarding the excessive force claims. Summary judgment must be denied.

### A.  The Assault and Battery Claims Are Not Time-Barred

Defendants argue that the assault and battery claims are time-barred, based on *Cox v. Treadway*, 75 F.3d 230 (6th Cir. 1996). There, the plaintiff's claims were time-barred because the complaint was amended to replace the John Doe defendants with named defendants after the statute of limitations had run. The Sixth Circuit explained that such amendments do not satisfy Rule 15(c). Rule 15(c), which governs whether amendments relate back, allows relation back where the party received such notice that it will not be prejudiced, and knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. *Cox* explained that replacing an unnamed defendant with a named defendant is a change in parties, not a substitution based on a mistake concerning the party's identity, and thus did not relate back. *Id.*

16

at 240, citing *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2nd Cir. 1993).

However, in *Cox*, the court specifically noted that the plaintiff in that case was unable to benefit from the "imputed knowledge" doctrine of *Berndt v. Tennessee*, 796 F.2d 879 (6th Cir. 1986). And because the imputed knowledge doctrine *does* apply here, Plaintiff's amendment *does* relate back, and the assault and battery claims are not time-barred. In *Berndt*, the employer of the newly added defendants was named in the original complaint. The Sixth Circuit explained that Rule 15(c) requires only constructive notice, and that constructive notice can be imputed where the new defendants are represented by the same attorney representing the original defendants and where the new defendants are officials of the original defendant. *Id.*, at 884. Thus, because the original complaint was made against the state of Tennessee, and the newly added defendants were Tennessee officials and were represented by the same counsel, the knowledge was imputed and the complaint related back. In *Cox*, however, the City of Louisville was never named as a defendant in the case, so knowledge of the claims could not be imputed to the new defendants. Here, Defendant Cuyahoga County was named in the original complaint, and the individual defendants named in the amended complaint had constructive knowledge as officials of Cuyahoga County and because they are represented by the same attorneys as the Defendant County. Thus, the amended complaint does relate back and the assault and battery claims are not time-barred.

### B. The Individual Defendants are Liable for Assault and Battery for the Same Reasons Their Actions Constituted Excessive Force

Under Ohio law, assault and battery is defined as "the willful threat or attempt to harm or touch another offensively, [where that] threat or attempt reasonably places the other in fear of such contact." *Harris v. United States*, 422 F.3d 322, 330 (6th Cir. 2005) (citations omitted). An assault constitutes the beginning of the act, which completed, constitutes battery. See *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988). Assault requires the actor knew with

substantial certainty their act would bring about harmful or offensive contact. *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148 (1993). "Contact which is offensive to a reasonable sense of personal dignity is offensive contact." *Love*, at 99, citing Restatement of the Law 2nd, Torts at Section 19. A law enforcement officer's use of force constitutes an offensive touching, unless privileged. *Id.*, at 99. This "privilege is negated by the use of excessive force." *Alley v. Bettencourt*, 134 Ohio App.3d 303, 313, 730 N.E.2d 1067 (4th Dist. 1999). See also *Morrison v. Horseshoe Casino*, 2020-Ohio-4131, 157 N.E.3d 406, ¶ 88 (8th Dist.). Because there are material disputes of fact regarding whether the uses of force were excessive here, Defendants Jecubic, Barthany, Griffin, and King must be denied summary judgment in regards to the assault and battery claims.

### C. The Individual Defendants Are Not Entitled to Immunity from the Assault and Battery Claims

Assault and battery are intentional torts. See Prosser & Keeton, Law of Torts (5th Ed. 1984), Sec. 9-10. While Defendants Jecubic, Barthany, King, and Griffin do not argue that they are entitled to immunity from the intentional tort claims,[5] Plaintiff addresses this issue to clarify the issue for the Court.

O.R.C. § 2744.03 provides immunity to political subdivision employees for their negligent actions, made in good faith and in the scope of their employment. However, they are not entitled to immunity for actions made outside of the scope of their employment, made in bad faith, made maliciously, or made wantonly or recklessly. O.R.C. § 2744.03(6). Thus, the success of a negligent breach of duty claim against a political subdivision employee depends on demonstrating that the defendant is not only negligent, but also reckless, wanton, malicious, or in bad faith. However, this

---

[5] See Doc. 57, Jecubic and Barthany Motion, PageID#1666 (arguing that negligence claim is barred by immunity); Doc. 58, King and Griffin Motion, PageID#1702 (arguing that the negligence claim is barred by immunity).

does not apply to intentional torts.

Intentional conduct suffices to prove recklessness. *Anderson v. Massillon*, 134 Ohio St.3d. 380, 983 N.E. 2nd 266, ¶ 35 (2012), citing Dobbs, The Law of Torts, Section 26 and 27 (2000). However, here, the issue is not whether the individual Defendants committed a tort based in negligence with a higher level of culpability. Rather, the tort is an intentional one. Assault and battery are only satisfied by an intentional act, and a use of force is "plainly intentional" because "one cannot accidently… subdue another." *Love*, 37 Ohio St.3d at 99. Thus, a defendant can never receive immunity for an intentional tort and § 2744 is categorically inapplicable to intentional torts. Because § 2744.06 is categorically inapplicable to assault and battery claims, Defendants Jecubic, Barthany, King, and Griffin and they are not entitled to immunity from these claims.

### D.  The Individual Defendants are Liable for their Reckless Breach of Duty

Defendants argue that "reckless, willful and/or wanton" conduct is not a distinct claim, but rather an element. However, Plaintiff's third claim for relief was a "State Law Claim for Negligence – Willful, Wanton, and Reckless Conduct." (Doc. 22, Complaint, PageID#158). This is a conventional negligence claim, with the additional element of proving that the conduct was willful, wanton, or reckless, for the purpose of overcoming Ohio statutory immunity. O.R.C. § 2744.03(6). Such a claim is well recognized. *See*, e.g., *Argabrite v. Neer*, 149 Ohio St. 3d 349, 2016-Ohio-8374, 75 N.E.3d 161; *Hardesty v. Alcantara*, 2015-Ohio-4591, 48 N.E.3d 127 (8th Dist.); *Tufts Carter v. Hymes*, No. 108523, 2020-Ohio-3967 (8th Dist.); *Moore v. City of Cleveland*, 2017-Ohio-1156, 87 N.E.3d 858 (8th Dist.). Regardless of whether this is considered a different claim from a conventional negligence claim, the reckless conduct of political subdivision employees does impose liability against them for the resulting injury, including in cases where the underlying conduct involves a use of force. See e.g. *Leonhardt v. City of Akron*, No. 29049, 2019-

19

Ohio-5223 (9th Dist.) (denying summary judgment on negligence claim based on use of force (as well as assault and battery)); *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) (denying summary judgment on Ohio state law negligence claim based on use of force (as well as assault and battery)); *David v. Matter*, 2017-Ohio-7351, 96 N.E.3d 1012 (6th Dist.) (denying summary judgment on negligent infliction of emotional distress claim based on use of force). Thus, the reckless breach of duty claim is distinct from the assault and battery claims. Either way, the claims are timely for the same reasons explained in Section III(A) and because the reckless breach of duty claim is subject to a two-year statute of limitations. *Love*, 37 Ohio St.3d at 98.

Summary judgment must be denied on Plaintiff's reckless breach of duty claims against Defendants Jecubic, Barthany, King, and Griffin because they acted recklessly[6] in breaching their duties of care to Mr. Kaminski. Defendants' arguments otherwise are premised on ignoring factual disputes in favor of accepting the facts in the version most favorable to the individual Defendants. This they cannot do. If the individual Defendants' conduct does not rise to the level of being intentional, a jury could find it to be reckless so long as they disregarded an obvious risk of harm to Kaminski when they chose to violently engage him and restrain him without cause. Summary judgment must be denied.

## CONCLUSION

For all the reasons stated above, Plaintiff asks the Court to deny the individual Defendants' motions for summary judgment and to permit this case to proceed to trial.

---

[6] Defendants misstate the recklessness standard. The standard is not "a perverse disregard" of a known risk, and it is not interchangeable with wantonness. *Anderson*, 134 Ohio St.3d 380, ¶ 31 (wanton and reckless describe "different and distinct degrees of care and are not interchangeable"). While the defendants in *Anderson* argued for defining recklessness as a perverse disregard, the Supreme Court of Ohio explained that reckless conduct is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances." *Id*. at ¶ 34, citing *Thompson v. McNeill*, 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705 (1990), adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965).

Respectfully Submitted,

*/s/ M. Caroline Hyatt*
Sarah Gelsomino (0084340)
Marcus Sidoti (0077476)
FRIEDMAN, GILBERT + GERHARDSTEIN
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com
marcus@FGGfirm.com

Jacqueline Greene (0092733)
M. Caroline Hyatt (0093323)
FRIEDMAN, GILBERT + GERHARDSTEIN
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
T: 513-572-4200
F: 216-621-0427
jacqueline@FGGfirm.com
caroline@FGGfirm.com

BRIAN KRAIG, ESQ. (0039691)
KEVIN V. ROGERS, JR. (0084994)
OF: KRAIG & KRAIG
The Superior Building 19th Floor
815 Superior Avenue East, Suite 1920
Cleveland, Ohio 44114
(216) 696-4009 phone
(216) 696-1835 fax
kraigandkraig@gmail.com
kvrlaw@gmail.com

*Counsel for Plaintiff*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ M. Caroline Hyatt*
M. Caroline Hyatt
*Attorney for Plaintiff*


**CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(f)**

This memorandum, excluding this certificate, the certificate of service, and the signature block, is less than twenty (20) pages long and complies with L.R. 7.1(f) as a standard track case.

*/s/ M. Caroline Hyatt*
M. Caroline Hyatt
*Attorney for Plaintiff*